# SHAKED LAW GROUP, P.C.
ATTORNEYS-AT-LAW
14 HARWOOD COURT, SUITE 415
SCARSDALE, NEW YORK 10583

_____

TEL. (917) 373-9128
ShakedLawGroup@Gmail.com

September 21, 2023

**FILED BY ECF**
Hon. Nina R. Morrison
United States District Judge
Eastern District of New York
225 Cadman Plaza East
Brooklyn, NY 11201

Re: <u>Plaintiff's Opposition to Defendant's Pre-Motion Conference</u>
*Pedro Martinez v. Pure Green NYC Wholesale Corp.*
Case No. 23-cv-4247-NRM-MMH

Dear Judge Morrison:

Plaintiff, Pedro Martinez ("<u>Plaintiff</u>"), by and through counsel, respectfully submits this letter in opposition to Defendant Pure Green NYC Wholesale Corp.'s ("<u>Defendant</u>" or "<u>Pure Green</u>") request for a ***second*** pre-motion conference, dated September 20, 2023. *See* ECF Dkt. 14. This letter serves as Plaintiff's response, under Rule 5.1.3 of this Court's Individual Motion Practices and Rules, in the matter above.

**<u>Background</u>**

Defendant first tried to dismiss the case based on Standing. When that failed, it now resorts to Mootness. While the Mootness argument could have been raised with the initial pre-motion letter, Defendant chose to cause all parties to incur additional legal fees by making two separate motions, 6 weeks apart.

Defendant requests to file a motion to dismiss on the grounds that Plaintiff's claims are Moot since the website in question has been remediated. Defendant relies upon a vague and unidentified "website audit" to conclude that the website was "certified for compliance." Yet, neither the audit nor the alleged certificate of compliance are made part of its pre-motion letter. We are not even told who conducted the audit or who provided the certificate for compliance. All we are told is that Defendant signed up with AccessiBe, a provider of website overlay widgets, to *allegedly* make its website accessible and compliant with WCAG standards.

**<u>Legal Standard for Mootness</u>**

As a preliminary matter, Plaintiff disputes Defendant's self-serving claim that it has remediated its website Dkt. 14 at 1. If the motion is allowed to proceed, Plaintiff intends to submit an expert report showing that accessibility barriers, including those alleged in the Complaint, continue to exist.

Defendant relies upon Your Honor's June 2, 2023 Memorandum & Order in *Suris v. Crutchfield New Media, LLC*, 2023 WL 3792512 (E.D.N.Y. 2023). Plaintiff believes that the facts in *Crutchfield* are distinguishable from the facts in this case. (a) *Crutchfield* involved a deaf individual who could not access a video due to lack of closed captions. This case involves a blind individual who could not access many aspects of the website and could not complete a transaction; (b) fixing closed captions is a "black and white" evaluation. The closed captions are either accessible or they are not. There is NO gray area. Remediating a website is not so clear as there are many accessibility barriers at many levels. There is no magic button or plugin that can fix all of the problems. Determining whether a website has been remediated to function with screen readers requires an audit by an expert; (c) Defendant in this case has not submitted a declaration detailing the steps the company took in response to this litigation, nor has it even provided the name of who will provide such a declaration. In the case at hand, all Defendant can say is that it implemented the AccessiBe overlay widget as a magic panacea.

Defendant claims that the website was remediated prior to Plaintiff's multiple visits to the website. Yet, it does not indicate when the website was remediated or when it signed up with AccessiBe. Plaintiff **disputes** the claim that the AccessiBe overlay widget existed on the date this action was filed (June 8, 2023). Plaintiff also disputes that the website is now accessible. These are questions of fact that cannot be resolved through a motion to dismiss. "The Supreme Court has established that a defendant cannot automatically moot a case simply by ending its unlawful conduct once sued." *Monegro v. I-Blades, Inc.*, 2023 WL 2499718, at *2 (S.D.N.Y. Mar. 14, 2023). "Otherwise, 'a defendant could engage in unlawful conduct, stop when sued… then pick up where he left off…'" *Id.* (quoting *Already LLC v. Nike*, 568 U.S. 85, 91 (2013)). The same is true here. To establish mootness by remedial action, a defendant must demonstrate that "(1) there is no reasonable expectation that the alleged violation will recur and (2) interim relief or events have completely and irrevocably eradicated the effects of the alleged violation." *Monge v. 405 Hotel LLC*, 2021 WL 982866 at *9 (E.D.N.Y. Feb. 24, 2021) (cleaned up).

In this case, Defendant does not even come close to satisfying its burden. For its part, Defendant relies on *Diaz v. Kroger Co.*, 2019 WL 2357531 (S.D.N.Y. Jun 4, 2019), which is distinguishable for many reasons. There, the defendant did not even ship products (groceries) to New Yorkers. 2019 WL 2357531 ("The Court's review confirms that 'delivery is not available' to *any* New York state zip code'") (emphasis in original). In *Kroger Co.* Judge Failla set forth the following requirements for mootness:

1. Defendant undertook compliance with the WCAG standards before the lawsuit was filed. In this case, defendant has not provided a start date or any proof, i.e. name of vendor, what was fixed, date of fixing, etc. of its remediation of the Website;
2. The Website is today compliant with those standards. This is a question of fact. Plaintiff believes it is not compliant;
3. Defendant provided an Affidavit from the person responsible for its website that the specific barriers to access identified in Plaintiff's complaint have been remedied and that no such barriers to access, as alleged, still exist with the website. In this case, no affidavit has been provided and the barriers to access, as alleged, still exist;

4. Defendant has no intention of undoing those changes or regressing to non-compliance with the ADA.  In this case, defendant has not made any such statement; and
5. Defendant commits to keep its website up to date and compliant with all applicable standards to make the website as accessible to all as possible.  In this case, no such commitment has been proffered.  *See Kroger* at page 8.

"While defendant may be in the process of updating the accessibility of its Website, they have yet to successfully do so.  Defendant has not established that 'it [is] absolutely clear that the allegedly wrongful behavior could not reasonably be expected to recur."  *See Marett v. Five Guys Enterprises, LLC*, No. 17-cv-788-KBF (S.D.N.Y. July 21, 2017) (citing *Friends of the Earth, Inc. v. Laidlaw Envir. Servs. (TOC), Inc.*, 528 U.S. 167, 189 (2000).

### AccessiBe Does NOT Make Websites Accessible

The National Federation of the Blind declined to accept AccessiBe's participation in its National Convention or to allow AccessiBe to use its platform to promote itself.[1] NBC News reported that companies that rely on AccessiBe have prevented blind people from all sorts of normal activities online, like paying rent, teaching a class or buying Christmas gifts. *See* April Glasser, *Blind people, advocates slam company claiming to make websites ADA compliant,* NBC News, May 9, 2021.[2]  As NBC News reported, AccessiBe has been cited in at least two recent lawsuits by people who claim the websites don't comply with the ADA. *Id.* In *Murphy v. Eyebobs*, 1:21 cv-00017-RA, Karl Groves, an accessibility auditor, software developer and expert witness in the case, analyzed 50 websites that use AccessiBe and testified that he found thousands of problems on the sites that could interfere with the compatibility with screen readers. *See* Groves, *Sole reliance on accessiBe will not be sufficient in ensuring full and equal access to a website* (filed as an exhibit to *Murphy v. Eyebobs*, 1:21 cv-00017-RAL).

Moreover, AccessiBe was sued by one of its rivals who alleges that AccessiBe's overlay does not work, makes websites less accessible, and that AccessiBe makes false claims about its products. *See AudioEye, Inc. v. AccessiBe Ltd.*, Case No. 6:20-cv-997 (W.D. Texas, Filed 10/26/20).

In other words, the implementation of the AccessiBe overlay widget – the least expensive product offered to *allegedly* remediate websites – is far from a *panacea*, and in fact, does not remediate websites at all. Defendant's website continues to contain many accessibility barriers making it impossible for Plaintiff and other blind persons to complete a transaction.

### Conclusion

For the above reasons, Plaintiff does not believe that any supportable grounds exist for Defendant to proceed, in good faith, with a motion to dismiss. Plaintiff asks this Court to deny Defendant's request for leave to move to dismiss.

---

[1] https://nfb.org/about-us/press-room/national-convention-sponsorship-statement-regarding-accessibe.
[2] https://www.nbcnews.com/tech/innovation/blind-people-advocates-slam-company-claiming-make-websites-ada-compliant-n1266720.

                                              Respectfully submitted,
                                              */s/Dan Shaked*
                                              Dan Shaked, Esq.

cc:      Counsel for Defendant (via ECF)