UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------X
PEDRO MARTINEZ, Individually and as the
representative of a class of similarly situated persons,

                                          Case No. 23-cv-4247-NRM-MMH

                Plaintiff,

        - against -

PURE GREEN NYC WHOLESALE CORP.,

                Defendant.
-------------------------------------------------------------X

**PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION TO
DEFENDANT PURE GREEN NYC WHOLESALE CORP.'S MOTION TO DISMISS**

**SHAKED LAW GROUP, P.C.**
Dan Shaked, Esq.
14 Harwood Court, Suite 415
Scarsdale, NY 10583
Tel. (917) 373-9128
ShakedLawGroup@gmail.com
*Attorneys for Plaintiff*

## <u>TABLE OF CONTENTS</u>

PRELIMINARY STATEMENT………………………………………………………1

INTRODUCTION……………………………………………………………………1

FACTUAL BACKGROUND………………………………………………………1

    I.    The Parties……………………………………………………………..2

        A. The Plaintiff………………………………………………………2

        B. The Defendant……………………………………………………3

STANDARD OF REVIEW…………………………………………………………3

ARGUMENT…………………………………………………………………………4

    I.    The Complaint is NOT Moot……………………………………………4

        A. Expert Evidence Confirms the Website's Inaccessibility………………8

        B. AccessiBe does NOT Remediate Websites………………………9

        C. AccessiBe Admits that is Product may NOT Resolve all Accessibility….11
            Issues

    II.    Plaintiff's Has Standing…………………………………………………15

CONCLUSION………………………………………………………………………17

## **TABLE OF AUTHORITIES**

*Already LLC v. Nike*, 568 U.S. 85 (2013)…………………………………………………..5

*Angeles v. Grace Products* 2021 WL 4340427 (S.D.N.Y. Sept. 23, 2021)…………..8, 9, 16

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009)…………………………………………………4, 16

*Bassaw v. United Indus. Corp.*, 19-cv-7559 (JMF), 2020 U.S. Dist. LEXIS 157800 (S.D.N.Y. Aug. 31, 2020)…………………………………………………………………4

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007)…………………………………....…………..4

*Calcano v. Cole Haan LLC*, 2021 WL 849434 *2 (S.D.N.Y. Mar. 5, 2021) …..…………16

*Calcano v. Swarovski N. Am. Ltd.*, 36 F.4ᵗʰ 68 (2d Cir. 2022) …………………………....16

*Del-Orden v. Bonobos, Inc.*, 2017 WL 6547902 (S.D.N.Y. Dec. 20, 2017)…………....…….8

*Diaz v. Kroger Co.*, 2019 WL 2357531 (S.D.N.Y. Jun 4, 2019)………………………….....5, 7

*Feltenstein v. City of New Rochelle*, 254 F.Supp. 3d 647 (S.D.N.Y. May 30, 2017)…………7

*Friends of the Earth, Inc. v. Laidlaw Enviro. Servs. (TOC), Inc.*, 528 U.S. 167 (2000)…...5, 8

*Hecht v. Magnanni Inc.*, 20-CV-05316 (MKV), 2022 WL 974449 *1 (S.D.N.Y. Mar. 31, 2022) ……………………………………………………………….9

*Marett v. Five Guys Enterprises, LLC*, No. 17-cv-788-KBF (S.D.N.Y. July 21, 2017)……...8

*Monegro v. I-Blades, Inc.*, 2023 WL 2499718 (S.D.N.Y. Mar. 14, 2023)………………..…….5

*Monge v. 405 Hotel LLC*, 2021 WL 982866 (E.D.N.Y. Feb. 24, 2021)………………….....5

*Murphy v. Eyebobs, LLC*, 1:21-cv-00017 (Erie) (W.D. Pa. Oct. 6, 2021)………………..…….11

*Noel v. New York City Taxi and Limousine Comm'n*, 687 F.3d 63 (2d Cir. 2012)…………..3

*Sanchez v. Nutco, Inc.*, 20-cv-10107 (JPO), 2022 U.S. Dist. LEXIS 51247 (S.D.N.Y. Mar. 22, 2022)…………………………………………………………………..4, 17

*Sullivan v. Study.com LLC*, 18-cv-01939 (JPO), 2019 U.S. Dist. LEXIS 47073 (S.D.N.Y. Mar. 21, 2019)………………………………………………………………8, 15, 11

*Tavarez v. Moo Organic Chocolates, LLC*, No. 21-CV-9816 (VEC),
2022 U.S. Dist. LEXIS 210720 ……………………………………………………………...17

*Weekes v. Outdoor Gear Exch., Inc.,* 2023 WL 2368989 (S.D.N.Y. Mar. 6, 2023)…………..4

**<u>STATUTES</u>**

Americans with Disabilities Act……………………………………………………..*passim*

New York City Human Rights Law………………..………………………………..*passim*

New York State Civil Rights Law………..………………………………………..*passim*

New York State Human Rights Law……………..………………………………..*passim*

## PRELIMINARY STATEMENT

Plaintiff, Pedro Martinez, a legally blind person submits the following in opposition to the Motion to Dismiss ("MTD" or "Motion"), dated May 17, 2024, filed by the defendant, Pure Green NYC Wholesale Corp. ("Defendant" or "Pure Green"), arguing that Plaintiff's claims are moot and that his State and City law claims should be dismissed on the merits.

## INTRODUCTION

Defendant starts its Memorandum of Law ("Def. Memo.") with an accurate legal conclusion – "[where] a defendant permanently and irrevocably remedies the complained of access barriers, a plaintiff's ADA claim is rendered moot, because the injunctive relief sought no longer exists." Def. Memo at 1. But that's where the accuracy ceases. (i) whether or not the access barriers have been remedied is a question of fact to be determined by expert witnesses after the conclusion of discovery; and (b) Defendant's website has NOT been remedied in this case and continues to contain access barriers to Plaintiff and other blind persons.

As set forth in detail below, Plaintiff has proven through a Compliance Audit, a declaration from the preparer of the Compliance Audit, and from Plaintiff's own experience, that the Website remains inaccessible to Plaintiff and the blind community in general. Therefore, Defendant's claims of mootness must be rejected and this motion must be denied.

## FACTUAL BACKGROUND

Plaintiff filed the Complaint ("Comp.") on June 8, 2023, nearly a year ago. The lawsuit seeks injunctive relief and monetary damages against Pure Green for their failure to design, construct, maintain, and operate their website to be fully accessible to and independently usable by Plaintiff. Defendant is denying Plaintiff with equal access to the goods and services Pure Green provides to its non-disabled customers through www.puregreen.com (hereinafter

1

"puregreen.com" or the "website"). Defendant's denial of full and equal access to its website, and therefore denial of its products and services offered, and in conjunction with its physical locations, is a violation of Plaintiff's rights under the following: the Americans with Disabilities Act ("ADA"; the New York State Human Rights Law ("NYSHRL"), N.Y. Exec. Law § 290 *et seq.*; the New York State Civil Rights Law, § 40 *et seq.* ("NYSCRL") and § 40-c *et seq.*; and the New York City Human Rights Law, N.Y.C. Administrative Code §§ 8-101 *et seq.* ("NYCHRL") (jointly, the "Disability Statutes").

## I.    **The Parties**

### A.  **The Plaintiff**

Plaintiff, Pedro Martinez, is a legally blind person who lost his sight when he was approximately thirteen years old, on or about 1987, resulting from a genetic condition which caused an incurable retinal detachment in both of his eyes. Plaintiff is a member of a protected class under the Disability Statutes. He uses Job Access With Speech ("JAWS") screen reader software to read website content on her personal computer. Comp. ¶¶18, 37. He has twenty (20) years' experience using JAWS.

Plaintiff made multiple attempts—none of which were successful—to use Defendant's website, puregreen.com (the "Website") to make an online purchase of the Immunity Shot and the Best Sellers Package for delivery to his home Comp. ¶¶ 11, 21, 43. He visited the Website on numerous occasions in order to complete a purchase, most recently on May 31, 2023 and June 4, 2023. *Id.* ¶ 43. Plaintiff was unable to complete the purchase because the Website contains multiple access barriers that denied Plaintiff full and equal access to the products offered on the Website. The barriers include (collectively, the "Access Barriers"), without limitations:

- Plaintiff was unable to add any products to the shopping cart.
- Plaintiff was unable to close the shopping cart pop-up.

2

- Plaintiff was unable to access the nutritional label of any product.
- Plaintiff encountered numerous access barriers to the website including: lack of alt-text on graphics, inaccessible drop-down menus, lack of navigation links, lack of adequate prompting and labeling, etc.

*Id.* at 34-37.

These Access Barriers existed at the times Plaintiff was on the Website. Plaintiff was denied and continues to be denied equal access to the Website. Plaintiff maintains a strong desire, however, to make purchases of products sold on the Website. Plaintiff remains expectant that the Access Barriers will be cured expeditiously, as Plaintiff unequivocally intends to return to the Website to complete the desired purchase and to make additional purchases in the future.

**B. The Defendant**

Defendant, Pure Green, is an online retail company that owns and operates the Website. *Id.* at 4. Pure Green provides consumers with access to an array of goods and services, including, the ability to view and purchase nutrient-dense cold-press juices, hand-crafted smoothies, and acai bowls, amongst the many other products. Comp. ¶ 21.

## STANDARD OF REVIEW

New York federal courts have developed substantial case law concerning website accessibility actions under the ADA, which this Court should respectfully find highly persuasive in denying this Motion to Dismiss.

Courts should not prematurely dismiss complaints of civil rights violations. *See Gregory v. Daly*, 243 F.3d 687, 691 (2d Cir. 2001). "As a remedial statute, the ADA must be broadly construed to effectuate its purpose of providing a clear and comprehensive national mandate for the elimination of discrimination against individuals with disabilities." *Noel v. New York City Taxi and Limousine Comm'n*, 687 F.3d 63, 68 (2d Cir. 2012). Similarly, in reviewing standing under the ADA, a broad view of constitutional standing is appropriate because private

3

enforcement suits are the primary method of obtaining compliance with the Act. *See. Sanchez v. Nutco, Inc.*, 20-cv-10107 (JPO), 2022 U.S. Dist. LEXIS 51247, at *5 (S.D.N.Y. Mar. 22, 2022).

When examining a motion to dismiss an ADA claim for lack of subject matter jurisdiction, a court must "take all facts alleged in the complaint as true and draw all reasonable inferences in favor of plaintiff." *Bassaw v. United Indus. Corp.*, 19-cv-7559 (JMF), 2020 U.S. Dist. LEXIS 157800, at *4 (S.D.N.Y. Aug. 31, 2020). To survive a motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Plus, in the context of a [motion to dismiss], "the Court may consider evidence outside the pleadings to resolve the disputed jurisdictional fact issues." *Weekes v. Outdoor Gear Exch., Inc.,* 2023 WL 2368989 at *2 (S.D.N.Y. Mar. 6, 2023).

To survive a motion to dismiss for failure to state a claim, a plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." *Nutco*, 2022 U.S. Dist. LEXIS 51247 at *14-*15 (quoting *Twombly*, 550 U.S. 544, 548 (2007). A plaintiff pleads such facial plausibility by including "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. at *15. All reasonable inferences are drawn in the plaintiff's favor. *Id*. The court's review is "limited to the facts as asserted within the four corners of the complaint, the documents attached to the complaint as exhibits and any documents incorporated in the complaint by reference." *Id*.

## **ARGUMENT**

### I.    **The Complaint is NOT moot**

Defendant argues that Plaintiff's action is moot because Defendant purports to have remedied the Access Barriers. In support of its argument, Defendant attached an Affidavit from its Chief Executive Office, Ross Franklin ("Franklin Affidavit") and a so-called Compliance Audit dated

4

April 19, 2023 (Defendant's Exhibit A) from AccessiBe, the company whose services Pure Green allegedly retained to remediate its website ("AccessiBe Audit"). Respectfully, this Court should discount the Franklin Affidavit as not credible because it consists solely of self-serving legal conclusions form a person who has no first-hand knowledge of web development or website accessibility. The Court should respectfully further discount the AccessiBe Audit as not credible because it does not contain an affidavit in support from any employee of AccessiBe, because it is dated prior to the filing of the lawsuit, because it disclaims warranties, and because AccessiBe has a reputation for ineffectiveness and unreliability in the visually impaired community.

Plaintiff, by contrast offers an analysis from a qualified third-party expert, Michael McCaffrey of ADASure as well as a declaration from Plaintiff.

"The Supreme Court has established that a defendant cannot automatically moot a case simply by ending its unlawful conduct once sued." *Monegro v. I-Blades, Inc.*, 2023 WL 2499718, at *2 (S.D.N.Y. Mar. 14, 2023) (cleaned up). "Otherwise, 'a defendant could engage in unlawful conduct, stop when sued… then pick up where he left off…'" *Id.* (quoting *Already LLC v. Nike*, 568 U.S. 85, 91 (2013)). Thus, to establish mootness by remedial action, a defendant must demonstrate that "(1) there is no reasonable expectation that the alleged violation will recur and (2) interim relief or events have completely and irrevocably eradicated the effects of the alleged violation." *Monge v. 405 Hotel LLC*, 2021 WL 982866 at *9 (E.D.N.Y. Feb. 24, 2021); *see Diaz v. Kroger*, 2019 WL 2357531 at *2 & n.7 (S.D.N.Y. June 4, 2019). And in the context of injunctive relief under the ADA, a defendant can only prove mootness if it satisfies the "*formidable burden*" of demonstrating that it is "*absolutely clear* the alleged wrongful behavior

could not reasonably be expected to recur." *Friends of the Earth, Inc. v. Laidlaw Enviro. Servs. (TOC), Inc.*, 528 U.S. 167, 189 (2000) (emphasis added).

There is no magic buttons or plugins that can instantly make an inaccessible website suddenly fully accessible. While it is not expected that every bell and whistle of a website will be 100% accessible to blind screen reader users, it is, at a minimum, expected that the basic functions of browsing and completing a purchase must be fully accessible under the ADA. Determining whether a website has been remediated to function with screen readers requires an audit by an expert.

Here, Pure Green does not come close to meeting its burden. Pure Green was made aware of Plaintiff's allegations shortly after the instant action was filed on June 8, 2023. Instead of investigating the allegations and attempting to remediate the access barriers, Pure Green elected to pursue motion practice. They initially sought to dismiss the Complaint based on standing, and when that failed, resorted to mootness. Defendant's Memorandum of Law refers to "remediation" of the website over and over (Def. Memo. at 3, 4, 5, 6), yet it does not give a single instance or example of how or when the website was remediated. Instead, the Memorandum repeats that "as of April 19, 2023" the website was remediated (Def. Memo. at 1, 3). Defendant's motion does not claim that Plaintiff's allegations have been investigated, does not claim that it reached out to any web developer or web accessibility expert, or even AccessiBe itself after the lawsuit was filed. Instead, the wrongful behavior is *continuing* to occur because of Defendant's denial and refusal to remediate its website. Therefore, Defendant cannot meet its "*formidable burden*" of demonstrating that it is absolutely clear the alleged wrongful behavior could not reasonably be expected to recur.

In his Affidavit, Franklin cites no evidence in support of his assertions that the "website is accessible to all" Franklin Aff. ¶ 16, other than making a broad claim that "Pure Green's Website utilizes technologies that are meant to make it as accessible as possible at all times." Franklin Affidavit ¶ 7. Oddly, Franklin alleges the he "made sure that the deficiencies alleged in the Complaint have been remediated" Franklin Affidavit ¶ 13, yet nowhere in his Affidavit nor in Defendant's Memorandum of Law are there any claims that any remediation actually took place after the filing of this lawsuit. Moreover, nowhere in his Affidavit does Franklin allege that he personally performed or had responsibility for any of the remediation that he claims has been applied to the Website. Ross Franklin may be an expert in the health and wellness industry, but he is no expert in web accessibility.

Respectfully, this Court should not credit Franklin's statements about the remediation and compliance efforts here because (i) they falsely claim that remediation of the website took place after becoming aware of Plaintiff's claims; and (ii) by his own admission, he delegated the tasks to outside vendors rather than performing them himself. Franklin lacks the proper level of personal knowledge of the facts here. *See Feltenstein v. City of New Rochelle*, 254 F.Supp. 3d 647, 657 (S.D.N.Y. May 30, 2017) (affidavit is not sufficient to moot claim when it makes legal conclusions of compliance with the ADA without providing sufficient factual detail).

The reality is that, as of today, the website remains inaccessible to Plaintiff. *See* Martinez Decl. ¶ 11, a copy of which is annexed hereto as Exhibit A. Importantly, nothing in the Franklin Affidavit—or any of Defendant's evidence—rebuts that conclusion, or convincingly establishes that the Website has been fixed – or in this case, that the website was fully accessible on April 19, 2023 (two months prior to the filing of this action).

Defendant did not meet any of the requirements for the finding of mootness which Judge Failla evaluated in *Kroger*: (i) Defendant did not implement any efforts to comply with WCAG

*after* the action was filed; (ii) The Website is today *not* compliant with those standards; (iii) Defendant has *not* provided an affidavit from the person responsible for its Website showing specific barriers have been remedied; (iv) Defendant has *not* affirmed that it will not undue the remediation once completed; and (v) Defendant has *not* committed to keeping its Website up to date.

*See Kroger Co*, No., 2019 WL 2357531, at *3, 8.

Like the defendant in *Angeles v. Grace Products* 2021 WL 4340427, at *3 (S.D.N.Y. Sept. 23, 2021), Pure Green similarly claims that it has engaged a third-party accessibility consultant thereby mooting this case. This Court should reject Pure Green's bid as the court did there too. *Id*. In doing so, the court in *Grace Products* explained, "[c]ourts have been unwilling to find this burden met... where there was *insufficient evidence* to show that claimed efforts had actually been made." *Id*. at *3 (discussing cases) (emphasis added); *accord Sullivan v. Study.com LLC*, 2019 WL 1299966, at *5 (S.D.N.Y. Mar. 21, 2019); *Del-Orden v. Bonobos, Inc.*, 2017 WL 6547902, at *11–12 (S.D.N.Y. Dec. 20, 2017). Similar to *Marett v. Five Guys Enterprises, LLC*, No. 17-cv-788-KBF (S.D.N.Y. July 21, 2017), "[the] defendant may be in the process of updating the accessibility of its Website, [but] they have yet to successfully do so. Defendant has not established that 'it [is] absolutely clear that the alleged wrongful behavior could not reasonably be expected to recur." No. 17-cv-788-KBF (S.D.N.Y. July 21, 2017) (citing *Friends of the Earth v. Laidlaw Encir. Servs (TOC), Inc.*, 528 U.S. at 189).

## A. Expert Evidence Confirms The Website's Inaccessibility

Whereas Defendant has offered no neutral, third-party corroboration of its remediation work, Plaintiff attached the results of an analysis by accessibility expert Michael McCaffrey of ADASure Digital Consultancy. In support of the analysis, attached please find Michael

8

McCaffrey's CV (<u>Exhibit B</u>), Michael McCaffrey's Declaration (the "McCaffrey Decl.") (<u>Exhibit C</u>), and ADASure's website Compliance Audit (the "Audit") (<u>Exhibit D</u>).

In his Declaration, McCaffrey sets forth specific accessibility barriers that still exist on the Website today including specific violations of WCAG guidelines and summarily finds that Defendant's website is not accessible to visually impaired users. McCaffrey Decl. At 4. For instance, the Audit finds that as of <u>today</u>, there are significant accessibility issues on the website, including: (i) incorrectly labeled product images; (ii) inaccessible promotional discounts (only accessible to sighted visitors using a mouse) (iii) inability to add products to the shopping cart; (iv) some links are announced multiple times; others not announced at all; (v) inability to change quantity in the quantity field; (vi) nutritional facts are not accessible; (vii) texts associated with images are not announced and products cannot be identified; amongst the many accessibility barriers that exist on the website.

Therefore, contrary to Defendant's claims, the website is not accessible today. Plaintiff has provided evidence including an expert affidavit describing the still-existing violations and a detailed audit showing that barriers still exist on the Website. *See Hecht v. Magnanni Inc.*, No. 20-CV-05316 (MKV), 2022 WL 974449 *1 (S.D.N.Y. Mar. 31, 2022) (In response to a motion to dismiss for lack of subject matter jurisdiction, plaintiff provided an expert affidavit describing the existing violations. The court determined that a dispute of fact existed and dismissal was not appropriate). Therefore, this Court should deny Defendant's mootness claim. See *Sullivan v. Study.com LLC*, 2019 WL 1299966, at *5 (rejecting mootness argument where plaintiff identified continued barriers to accessing defendant's website). Properly framed, Pure Green does not come close to "demonstrating that [it] has altered the website to bring it into full and permanent compliance..." *Grace Prod., Inc.*, 2021 WL 4340427, at *3.

### B.  <u>AccessiBe does NOT Remediate Websites</u>

**National Convention Sponsorship Statement Regarding accessiBe**

**Baltimore, Maryland (June 24, 2021):** The National Federation of the Blind, America's civil rights organization of blind people, carries out the will of blind Americans as expressed through the National Convention and, between conventions, through the decisions of its elected officers and directors. This week, the Board of Directors reviewed accessiBe's business practices at the urging of members who have researched and interacted with the company, and the Board believes that accessiBe currently engages in behavior that is harmful to the advancement of blind people in society. In particular, it is the opinion of the Board that accessiBe peremptorily and scornfully dismisses the concerns blind people have about its products and its approach to accessibility. The Board is deeply concerned that the company treats blind access technology experts shabbily and disrespectfully in private meetings and disparages the blind in the press and their other communications. It seems that accessiBe fails to acknowledge that blind experts and regular screen reader users know what is accessible and what is not. The nation's blind will not be placated, bullied, or bought off. Therefore, the Board revoked accessiBe's sponsorship of the convention on June 22, 2021. We hope that the company will ultimately recognize and appreciate the experience and expertise that blind people can bring to improving its products and services and align its mission with the expressed will and true interests of the blind. Unless and until that happens, we decline to accept accessiBe's participation in the 2021 National Convention or to allow it to use our convention platform to promote itself.

https://nfb.org/about-us/press-room/national-convention-sponsorship-statement-regarding-accessibe.

Plaintiff respectfully urges that this Court not take AccessiBe's claims at face value. AccessBe belongs to a category of automated overlay widgets that the visually impaired community has widely rejected. In 2021, 826 activists, technical experts, and attorneys signed a public letter urging proprietors of websites not to use automated overlay widgets, including the AccessBe widget. See Plaintiff's <u>Exhibit E</u>, "Overlay Fact Sheet," at 14-54. The Overlay Fact Sheet points out that applications purporting to solve accessibility problems through an automated overlay widget are unreliable in many crucial areas, including the application of text

alternatives to images and the repair of keyboard access, field labels, error management, error handing, and focus control on forms. *Id.* at 5.

As reported by NBC News,

> In recent months, blind people and disability advocates have been speaking out on social media and suing companies that use AccessiBe. Blind people say AccessiBe, which is supposed to automatically make websites more compatible with the screen readers blind people rely on to access the internet, has prevented them from all sorts of normal activities online, like paying rent, teaching a class or buying Christmas gifts.

*See* April Glasser, *Blind people, advocates slam company claiming to make websites ADA compliant,* NBC News, May 9, 2021.[1] (hereafter, "Glasser").

In *Murphy v. Eyebobs, LLC*, 1:21-cv-00017 (Erie) (W.D. Pa. Oct. 6, 2021), Karl Groves, an accessibility auditor, software developer and expert witness in the case, analyzed 50 websites that use AccessiBe and testified that he found thousands of problems on the sites that could interfere with the compatibility with screen readers. *See* Groves, *Sole reliance on accessiBe will not be sufficient in ensuring full and equal access to a website* (filed as an exhibit to *Murphy v. Eyebobs*, 1:21 cv-00017-RAL) (a copy of which is attached as <u>Exhibit F</u>) In his report, he found the following issues, *inter alia:*

- AccessiBe is unable to correct accessibility issues in images and other non-text content. *Id.*, pp.9-22

- AccessiBe is unable to correct accessibility issues in forms; *Id.*, pp.23-25

- AccessiBe is unable to correct accessibility issues in document heading structure. *Id.*, pp.25-27.

- AccessiBe is unable to correct accessibility issues in keyboard navigation. *Id.*, p.27

Groves even found accessibility issues within the accessiBe widget itself. *Id.,* pp. 28-31.

---

[1] https://www.nbcnews.com/tech/innovation/blind-people-advocates-slam-company-claiming-make-websites-ada-compliant-n1266720.

C. **AccessiBe Admits that its Product may NOT Resolve all Accessibility Issues**

Even AccessiBe itself denies that it resolves all accessibility issues. Defendant's April 19, 2023 AccessiBe Audit states on its first page that "this audit is subject to the terms of service [of AccessiBe]". The words "terms of service," when selected, open a link to AccessiBe's Terms of Service dated May 7, 2024 (the "AccessiBe Terms"), a copy of which is annexed hereto as Exhibit G. The AccessiBe Terms contain many exceptions to its service, require the customer to take proactive steps in the event that accessibility issues arise, require regular updates to its services, do not guarantee performance, and provide numerous disclaimers to its warranties and service.

For instance, paragraph 2.2 of the AccessiBe Terms provides that AccessiBe does not address or resolve certain accessibility issues including:

> (a) URL parameters (such as elements inserted in Your Website's URLs to help filter and organize content or track information on the website) will not be made accessible; (b) documents, PowerPoint, Excel, Word, pdf, audio, video, SVG, content presented in "iframe", and other formats and embedded content will not be made accessible; (c) Canvas and Flash components will not be made accessible; (d) components that have been handled via Manual Remediation Measures (as such term is defined below) will not be made accessible; and (e) any images or links that are subject to a Decipher Block (as such term is defined below) will not be made accessible. Addressing or resolving such Excluded Issues may require you to acquire additional services from us or other third parties.

Paragraph 4.2 states that "if . . . you receive a written complaint allgeing noncompliance of components of your [Website] for which accessServices remediation services were rendered with the standard in a manner that does not allow an individual with disabilities to use the [Website], you may notify us of such complaint within no later than 30 days of receipt of such complaint. . . . Following receipt of such notice, we will investigate the issue(s) raised in such complaint . . ." Did Pure Green notify AccessiBe of Plaintiff's complaint? Did AccessiBe

respond? These are critical questions of fact that need to be answered in determining if the website is accessible today.

Likewise, paragraph 7 of the AccessiBe Terms entitled *Litigation Support Package; Remediation Services*, requires the user to "provide us with prompt written notice" of third-party claims and complaints, including providing a copy of the complaint letter received. AccessiBe will then review the information to demonstrate accessibility. This was clearly not done by Pure Green. Paragraph 7.2 goes on to emphasize that AccessiBe "does not guarantee that you will not receive communications regading non-compliance of your [Website]."

Paragraph 8 of the AccessiBe Terms discusses Updates. Uploading updates to the AccessiBe widget is not mandatory and it is the responsibility of the user to accept all Updates. This raises the question of how many updates have been done by AccessiBe since April 19, 2023 and whether Pure Green has actually updated the service on the occasions that an update has been provided.

Paragraph 8.2 of the AccessiBe Terms states that "[e]ach service and its operation and certain featurs available therein may also be dependent on the network you use, and the content formats support." Again, this is a question of fact to determine if the AccessiBe widget is compatible with Pure Green's network.

AccessiBe offers different types of subscription plans. The subscription plan chosen must be "appropriate for the [Website} in relation to which you wish to use the Service." AccessiBe Terms ¶ 16.2. Did Pure Green sign up for the appropriate subscription? Did they ever upgrade their plan? These are all critical issues that need to be determined before discussing mootness.

Paragraph 31.5 of the AccessiBe Terms states that if the user implemented any accessibility measures other than AccessiBe's widget on their website, "[AccessiBe cannot guarantee that our Services will not affect, or be affected by, any other remediation measures." Again, did Pure Green implement any other remedial measures regarding the Website before or after signing up with AccessiBe?

Paragraph 31.10 of the AccessiBe Terms lets the user know that the widget is based on AI and "if a [Website] includes functionality that is unique or uncommon, [the widget] may not be able to remediate it."

Finally, paragraph 40 of the AccessiBe Terms includes a catchall **Disclaimer of Warranties**, portion of which reads as follows:

> NO COMPANY PARTY PROVIDES ANY WARRANTY OR UNDERTAKING, AND MAKES NO REPRESENTATION OF ANY KIND THAT THE SERVICES AND THE COMPANY CONTENT WILL MEET YOUR REQUIREMENTS, NEEDS OR PREFERENCES, OR ACHIEVE ANY INTENDED RESULTS, BE COMPATIBLE, UNINTERRUPTED, TIMELY, SECURE, OPERATE WITHOUT INTERRUPTION, MEET ANY PERFORMANCE OR RELIABILITY STANDARDS OR BE ERROR-FREE, OR THAT ANY ERRORS OR DEFECTS CAN OR WILL BE CORRECTED, OR THE RESULTS THAT MAY BE OBTAINED FROM USE OF THE SERVICES WILL BE COMPLETE, ACCURATE OR RELIABLE.

As expected, the next paragraph in the AccessiBe Terms relates to **Limitation of Liability**.

In other words, AccessiBe, by its own Terms of Service, makes it clear to the user that its product is not perfect, third-party complaints may and do come, and they do not take responsibility for any accessibility barriers encountered on its clients' websites.

Pure Green, for its part, (i) never communicated to AccessiBe that it received a complaint about the Website; (ii) did not provide a copy of Plaintiff's complaint to AccessiBe; (iii) did not indicate that it uploaded all AccessiBe updates and that it is using the latest version; (iv) did not

14

specify whether its network or content formats are compatible with the AccessiBe widget; (v) did not state which subscription plan it signed up for and what features are available with that particular subscription plan; (vi) did not indicate whether it implemented any accessibility measures other than AccessiBe; and (vii) did not indicate if the Website's functionality is unique or uncommon such that AccessiBe's AI feature may not be able to remediate it. Since the AccessiBe Compliance Audit which was provided by Defendant is from April 19, 2023, it is very likely that the AccessiBe widget utilized by Pure Green is not working as intended.

Therefore, contrary to Defendant's claims, the website is not accessible today. Plaintiff has provided evidence that barriers still exist on the Website. Therefore, this Court should deny Defendant's mootness claim. See *Sullivan v. Study.com LLC*, 2019 WL 1299966, at *5 (rejecting mootness argument where plaintiff identified continued barriers to accessing defendant's website). Properly framed, Free Rein does not come close to "demonstrating that [it] has altered the website to bring it into full and permanent compliance..." *Grace Prod., Inc.*, 2021 WL 4340427, at *3.

## II.    <u>Plaintiff Has Standing</u>

Defendant rehashes the requirements for standing in a website accessibility case in the Second Circuit - yet, Defendant fails to point to any facts in support of its argument. Defendant provides a single conclusory statement that "[t]he evidence shows that Plaintiff has failed to [meet] the second and third threshold requirements of bringing an action under Title III of the ADA" Def. Memo. at 6 without providing any such "evidence." Defendant then clarifies its position by stating that the only reason that there is no likelihood of future injury is because the

Website has been remediated. As the Website has not been remediated, Defendant's argument has no merit.

Any way you cut it, Plaintiff has met his standing requirements. Plaintiff explained that he (a) purchased specific products, i.e. the Immunity Shot and the Best Sellers Package; (b) on specific dates, i.e. most recently on May 31, 2023 and June 4, 2023; and (c) encountered specific accessibility barriers which made it impossible for him to make those purchases. Plaintiff also explained, in detail, his interest in the Defendant's products, how he became aware of Defendant's products, and why he will continue to purchase Defendant's products in the future. Comp. ¶¶ 43-44.

In the Second Circuit, for standing purposes, courts examine a plaintiff's intent to return "to ensure that the risk of harm is sufficiently imminent and substantial to establish standing." *Calcano v. Swarovski N. Am. Ltd.*, 36 F.4th 68 (2d Cir. 2022) at 74–75. The inquiry is not supposed to be complex or tricky; it is "a context-specific task that requires a reviewing court to draw on its judicial experience and common sense," mainly assessing the plausibility of a plaintiff's allegations. *Id.* (quoting *Iqbal*, 556 U.S. at 679). In considering whether a plaintiff's intent to return is plausible, "courts in this district have required the plaintiff to allege certain facts in detail, including when they attempted to access to the website, what they were attempting to do on the website, the specific barriers that prevented them from gaining access, and how they intend to utilize the website in the future." *Jenisa Angeles, v. Grace Prod., Inc.*, 2021 WL 4340427, at *2 (S.D.N.Y. Sept. 23, 2021); *see also Calcano v. Cole Haan LLC,* 2021 WL 849434 *2 (S.D.N.Y. Mar. 5, 2021) (criteria for in-store context).

Here, for starters, Plaintiff has adequately established an intent to return based on the well-pled allegations in his complaint. Specifically, Plaintiff intends to return to the Website.

16

Plaintiff visited one of Defendant's physical locations – at 325 Gates Avenue, Brooklyn, NY – and tried some of their products. He really enjoyed them and now he wants to continue purchasing Defendant's products online. He likes the products since they are an easy way to consume vital nutrients and feel energized and since they are affordable and come in many flavors. Plaintiff also finds them to be delicious. He prefers Defendant's products to those of other, similar brands and will continue to make purchases on Defendant's website if it was accessible. *See* Comp. ⁋ 44. That should be more than enough to satisfy the basic pleading requirements establishing intent to return under the ADA. *See Tavarez v. Moo Organic Chocolates, LLC*, No. 21-CV-9816 (VEC), 2022 U.S. Dist. LEXIS 210720 at *9-10 (habit of eating chocolate and interest in Almond Mini Bars); *see also Walters*, No. 6:21-CV-1115 (LEK/ATB), 2022 U.S. Dist. LEXIS 142148 at *9-11 (demonstrating an intent to return "to research and potentially purchase products and explore the services [offered] … in advance of his next ski trip."); *see also Sanchez*, No. 20-CV-10107 (JPO), 2022 U.S. Dist. LEXIS 51247 at *5 (interest in "pistachio nuts and other snack foods, tak[ing] advantage of discounts and promotions, and understand[ing] different product details… ."); *see also Angeles*, No. 20-cv-10167 (AJN), 2021 U.S. Dist. LEXIS 182317 at *4-5 (interest in chemical-free beauty products). Again, Defendant's only argument with respect to standing is that the website has been remediated and this case is moot. Nothing more, nothing less.

In sum, Plaintiff has properly alleged facts to establish standing to sue under the Disability Statutes. Therefore, Defendant's Motion to dismiss Plaintiff's action for lack of standing should be denied in its entirety.

## **CONCLUSION**

For the foregoing reasons, the Court should deny Defendant's Motion, and order such other and further relief as may be appropriate or necessary in favor of Plaintiff Pedro Martinez.

Dated:  June 14, 2024
       Scarsdale, New York

                               Respectfully submitted,

                               */s/Dan Shaked*
                               Dan Shaked
                               Shaked Law Group, P.C.
                               14 Harwood Court, Suite 415
                               Scarsdale, NY 10583
                               Tel.  (917) 373-9128
                               E-mail:  ShakedLawGroup@gmail.com
                               *Attorney for Plaintiff*

18