UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
─────────────────────────────────────X
PEDRO MARTINEZ, *individually and as the representative of a class of similarly situated persons*,

                Plaintiff,

      -against-

PURE GREEN NYC WHOLESALE CORP.,

               Defendant.
─────────────────────────────────────X

**MEMORANDUM & ORDER**

23-cv-4247 (NRM) (MMH)

NINA R. MORRISON, United States District Judge:

Plaintiff Pedro Martinez commenced this putative class action against Defendant Pure Green NYC Wholesale Corporation on June 8, 2023. Complaint ("Compl."), ECF No. 1. Plaintiff alleges violations of Title III of the Americans with Disabilities Act ("ADA"), New York State Human Rights Law ("NYSHRL"), New York State Civil Rights Law ("NYSCRL"), and New York City Human Rights Law ("NYCHRL"). On May 17, 2024, Defendant filed a motion to dismiss for lack of subject matter jurisdiction. For the reasons set forth below, Defendant's motion to dismiss is denied.

## BACKGROUND

"When evaluating a motion to dismiss for lack of subject matter jurisdiction, the court accepts all material factual allegations in the complaint as true but does not presume the truthfulness of the complaint's jurisdictional allegations." *Quezada*

1

*v. U.S. Wings, Inc.*, No. 20-CV-10707 (ER), 2021 WL 5827437, at *2 (S.D.N.Y. Dec. 7, 2021).

## I. Plaintiff's Allegations

On June 8, 2023, Plaintiff filed this action on behalf of himself and a putative class of similarly disabled persons, seeking certification under Fed. R. Civ. P. 23. *See* Compl. ¶¶ 50–51. Plaintiff "is [] visually-impaired and legally blind," and "requires screen-reading software to read website content." *Id.* ¶ 2. Plaintiff uses a screen-reading software called Job Access With Speech ("JAWS") to visit websites. *Id.* ¶¶ 26, 37. Defendant sells, *inter alia*, nutrient-dense cold-pressed juices, hand-crafted smoothies, and açai bowls in its physical stores and allows customers to purchase cold-pressed juices and hand-crafted smoothies for delivery to their home on Defendant's website puregreen.com. *Id.* ¶¶ 21, 29–31.

On May 31, 2023, June 4, 2023, and other unspecified dates in April and May of 2023, Plaintiff attempted to purchase Defendant's Immunity Shot and Best Sellers Package for delivery using puregreen.com. *Id.* ¶¶ 43–44. Plaintiff alleges that he was unable to independently complete purchases due to barriers to accessibility on Defendant's website. *Id.* ¶ 43. Specifically, Plaintiff alleges that he could not access any nutrition labels or use the shopping cart because he could not add or remove products, change the quantity of items, or continue to checkout. *Id.* ¶ 37.

Plaintiff identifies specific barriers that impede access for blind and visually impaired people including failure to provide alternative text ("alt-text") on graphics, inaccessible image maps, inappropriate navigation links, inadequate labeling and

prompting, inaccessible drop-down menus, empty and redundant links, and a requirement that transactions be performed with a mouse instead of a keyboard. *Id.* ¶¶ 34, 38.

Plaintiff explains that many important images on puregreen.com do not have alt-text — written descriptions of images that screen-readers can read aloud. *Id.* ¶ 35. Without a text equivalent, screen-readers cannot convey the content, context, or purpose of images to blind people. *See id.* Plaintiff alleges that since there is no alt-text, he and other blind customers are unable to browse the website. *Id.* The website's image maps (which combine multiple words and links into one image that allows users to navigate to multiple destinations within the website) also allegedly do not contain alt-text and are thus also inaccessible to blind users. *Id.* ¶ 38. Plaintiff alleges that the overall lack of navigation links exacerbates the problems that blind people experience using the website. *Id.* ¶ 39.

Plaintiff further alleges that puregreen.com lacks the necessary prompting information that would allow screen-reader users like himself to locate the online forms necessary to accurately select products, quantity, and frequency of delivery and to provide personal and financial information on such forms. *Id.* ¶ 36. This inadequate labeling prohibits blind website users from making purchases or inquiries about Defendant's products and securely entering their personal and financial information. *Id.*

In addition, Plaintiff alleges that the website's requirement that transactions be performed with a mouse (as opposed to a keyboard) also denies blind people the

3

ability to independently use the website. *Id.* ¶ 40. Plaintiff explains that blind people cannot actually use a mouse without the ability to see the pointer. *Id.* According to Plaintiff, "it is a fundamental tenet of web accessibility that for a page to be accessible to . . . blind people, it must be possible for the user to interact with the page using only the keyboard." *Id.* Plaintiff states that version 2.1 of the Web Content Accessibility Guidelines ("WCAG 2.1") guideline 2.4.1 requires a mechanism that allows users "to bypass blocks of content that are repeated on multiple webpages because requiring users to extensively tab before reaching the main content is an unacceptable barrier to accessing the website." *Id.* ¶ 41. Plaintiff avers that the website's inaccessible design, "which requires the use of a mouse to complete a transaction, denies Plaintiff and blind customers the ability to independently make purchases." *Id.* ¶ 41.

Lastly, Plaintiff alleges that he intends to return to puregreen.com if it becomes accessible in the future and that he "will definitely make purchases of additional products . . . sold on the website." *Id.* ¶ 44. He indicates at length his interest in purchasing Defendant's products from the website. *Id.* Plaintiff explains that he "really enjoyed the products" that he purchased in-person at one of Defendant's retail locations and that he enjoys "the fact that they are an easy way to consume vital nutrients and feel energized and are sold at affordable prices in many flavors." *Id.* He states that he prefers Defendant's products over other "similar items from other (accessible) online vendors" because "he finds them to be delicious and nutrient-dense and . . . more affordable than those sold by others." *Id.* Plaintiff notes

the specific products he would like delivered to his home in the future — smoothies and cold-pressed juices. *Id.*

Plaintiff avers that Defendant "[failed] to design, construct, maintain, and operate [its] website to be fully accessible to and independently usable by" visually impaired and blind people, including Plaintiff. *Id.* ¶ 4. Plaintiff alleges that Defendant's "denial of full and equal access to its website, and therefore denial of its products and services offered," violates the ADA. *Id.* Plaintiff further alleges state law claims under NYSHRL, NYSCRL, and NYCHRL. *Id.* ¶¶ 77–87, 92–102, 105–12.

## II. Procedural History

### A. This Court's Order Finding that Plaintiff has Standing

On August 14, 2023, Defendant filed two identical letters requesting a premotion conference on a motion to dismiss for a lack of standing. ECF Nos. 9, 10. Defendant argued that Plaintiff could not establish an injury in fact or the requisite reasonable inference of an intent to patronize Defendants' website. ECF No. 9 at 1–2; ECF No. 10 at 1–2.[1] Defendant also argued that "the instant action is demonstrative of the potential for abuse of the ADA noted in numerous cases in districts throughout the country" because of Plaintiff's "vague allegations of past patronage" and "serial litigation history," and attached a list of over 700 cases filed by Plaintiff's attorney in the Eastern and Southern District Courts of New York since 2001. ECF No. 9 at 1–2; ECF No. 10 at 1–2 (quotation omitted); ECF No. 10-1 (list of cases).

---

[1] All page references use ECF pagination except where noted.

On September 3, 2023, this Court construed Defendant's letter as a motion to dismiss for lack of standing and denied the motion. Order dated Sept. 3, 2023. The Court found that Plaintiff sufficiently pled "his intent to return to use Defendant's services, both because he has tried to use Defendant's website multiple times, and because of his physical proximity to one of Defendant's stores." *Id.* It also noted that "[w]hile the Court appreciates that Plaintiff has filed eleven ADA cases in 2023, this fact alone does not lead the Court to conclude that Plaintiff lacks standing or has not suffered injury in fact." *Id.* (citing *Davis v. Wild Friends Foods, Inc.*, 22-CV-4244 (LJL), 2023 WL 4364465, at *4 (S.D.N.Y. July 5, 2023) ("The fact that Plaintiff has filed nearly fifty complaints may just as well reflect the rampant nature of discrimination that persons with visual impairments face when using the internet. It is also not surprising, in light of the ubiquitous role that the internet plays in people's lives, that Plaintiff may have intended to visit and to use over fifty websites. This fact alone therefore does not make Plaintiff's allegations of standing any more or less plausible.")).

### B. The Instant Motion

On May 17, 2024, Defendant filed a motion to dismiss under Rule 12(b)(1) for lack of subject matter jurisdiction in which it argues that Plaintiff's claims are moot now that Defendant has purportedly brought the website into compliance and that Plaintiff lacks standing for the same reason. Mot. to Dismiss, ECF Nos. 21, 22. Along with its motion, Defendant included an affidavit from its CEO and founder, Ross Franklin. ("Franklin Aff."), ECF No. 23.

### *a. Ross Franklin's Affidavit*

Franklin claims that Defendant had "completely and irrevocably remediated the Website" to be consistent with the WCAG 2.1 at the AA level as of April 19, 2023, and that this was done approximately one month before Plaintiff allegedly visited the website and two months before Plaintiff filed the Complaint. *Id.* ¶ 5.[2] Franklin says that Defendant uses the accessibility interface known as "accessiBe" and "an AI-based application" and contends that they allow visually impaired people to adjust the website's settings to their individual needs, including remediating the website's HTML to adapt its functionality and behavior "for screen-readers used by blind-readers." *Id.* ¶¶ 8–12.

Franklin declares that he has "personally made sure that the deficiencies alleged in the Complaint have been remediated, and that no such barriers to access, as alleged, still exist with the Website." *Id.* ¶ 13. Franklin does not specify what deficiencies he investigated and makes no mention of Plaintiff's claims that Plaintiff cannot, for example, access the shopping cart or view the nutrition labels of products. *See* Compl. ¶ 37. Franklin attached a copy of a compliance audit that he says was issued by accessiBe on April 19, 2024, and that he says confirms that Defendant's website is in compliance with the WCAG 2.1, "at the AA level." Franklin Aff. ¶ 14. *See* Exhibit A attached to Franklin Decl., ECF No. 23-1 ("Compliance Audit"). However, the attached report is dated April 19, 2023. *Id.* at 2.

---

[2] Plaintiff alleges that he attempted to purchase Defendant's Immunity Shot and Best Sellers Package for delivery using puregreen.com on May 31, 2023, June 4, 2023, and other *unspecified* dates in April and May of 2023. *Id.* ¶¶ 43–44.

7

Plaintiff filed his response on June 14, 2024, along with, *inter alia*, an affidavit from Plaintiff and a declaration from a retained expert, Michael McCaffrey. Pl. Opp., ECF No. 24; Pl.'s Decl., ECF No. 24-1; McCaffrey Aff., ECF No. 24-3.

### b. *McCaffrey Declaration*[3]

Michael McCaffrey is a provider of "expert consulting services in the area of website accessibility under the [ADA]." McCaffrey Aff. ¶ 1. McCaffrey's work includes conducting website audits and analyzing website content, and he has "experience and training in web design, layout, coding, auditing, and testing of functionality, security, and operability of websites." *Id.* ¶¶ 1–2. He has experience evaluating websites for WCAG compliance and consulting companies with non-compliant websites in their remediation efforts. *Id.* ¶ 2. McCaffrey personally tested puregreen.com and concluded that, as of the filing date of June 8, 2023, "any blind visitor . . . using a screen reader would be unable to complete a purchase." *Id.* ¶ 5. Moreover, Defendant's "implementation of the [a]ccessiBe overlay widget . . . created new accessibility barriers." *Id.* ¶ 10.

Following Defendant's motion to dismiss claiming that the case is moot, McCaffrey and his team evaluated puregreen.com for a second time in May 2024 to assess whether "any issues existed that . . . acted as barriers to Plaintiff's use of the website" and "could not be overcome." *Id.* ¶ 4. The evaluation concluded on May 31, 2024. *Id.* ¶ 7. That evaluation revealed numerous accessibility barriers that prevented the website from meeting the WCAG 2.1 levels A and AA of accessibility.

---

[3] McCaffrey has dated the declaration June 12, 2023, but because it references May 31, 2024, and was filed June 14, 2024, it appears to be a typographical error.

8

*Id.* ¶¶ 7–8.  McCaffrey concluded, "with a high degree of scientific certainty," that puregreen.com "can and will continue to create access barriers for blind and visually impaired persons" and that the website's "defects act as a barrier to the effective use and enjoyment of the website for persons with low or no vision." *Id.* ¶ 9.  McCaffrey also claimed that "the deficiencies in [a]ccessiBe's product" and the company's "false claims" are well-documented.  *See id.* ¶ 10.  According to McCaffrey, "many industry experts have published detailed technical articles disputing [a]ccessiBe's claims that their overlay widget makes websites compliant with WCAG 2.1 Level A and AA guidelines" and that the National Federation for the Blind even "issue[d] a public statement against [accessiBe's] false claims." *Id.*[4]

### c. *Plaintiff's Declaration*

In his declaration, Plaintiff contends that the issues with accessing Defendant's website and purchasing products still exist.  Plaintiff begins by explaining that he is "fully blind" and that he lost his sight when he was 13 years old due to a genetic condition that caused an incurable retinal detachment in both of his eyes.  Pl.'s Decl. ¶ 1.  Plaintiff contends that puregreen.com "continues to contain access barriers today, making it impossible for [him] to . . . make purchases on the website," *id.* ¶ 2, and that the barriers have indeed worsened since the initial filing of the Complaint.  *Id.* ¶¶ 4, 7.  Plaintiff revisited puregreen.com "on multiple occasions in May 2024, most recently on May 31, 2024," and attempted to purchase a

---

[4] Courts in this Circuit have also "questioned accessiBe's reliability." *Velazquez v. Spice & Tea Exch*, No. 22-CV-7535 (PGG) (RWL), 2024 WL 3928613, at *7 (S.D.N.Y. Aug. 22, 2024), *report and recommendation adopted by* 2024 WL 4950065, at *1 (Dec. 3, 2024) (collecting cases).

9

product but could not complete the transaction due to the inaccessibility barriers that existed when he filed his first complaint, as well as what he claims are new barriers that did not exist when he first filed the lawsuit. *Id.* ¶¶ 8–9.

Plaintiff contends that he is familiar with accessiBe's overlay widget and that it "simply does not work for someone who is completely blind." *Id.* ¶ 9. He explains that the "[a]ccessiBe overlay widget conflicts with the screen reader, making it much more difficult, and in many cases, impossible, to navigate a website." *Id.* Plaintiff states that since the filing of the lawsuit, there are more issues with accessibility in Defendant's website:

> For instance, I am now unable to access any of the promotional pop-up discounts (which I am advised offer as much as a 15% discount)[.] I cannot access any product images, experience links being announced multiple times and others not announced at all, and unable to access texts associated with many images. I continue to be unable to add any product to the shopping cart, unable to change the quantity of any product, unable to learn the nutritional facts of any product, and unable to close the shopping cart pop-up.

*Id.* Due to Defendant's reliance on the accessiBe overlay widget and the aforementioned issues with accessibility, Plaintiff believes that Defendant's website "is only user-friendly for people who have full vision and can use a mouse, something that [he does not] have and cannot use." *Id.*

## **STANDARD OF REVIEW**

"A case is properly dismissed for lack of subject matter jurisdiction under Rule 12(b)(1) when the district court lacks the statutory or constitutional power to adjudicate it." *Makarova v. United States*, 201 F.3d 110, 113 (2d Cir. 2000). "A motion to dismiss for lack of subject matter jurisdiction may raise a facial challenge

10

based on the pleadings, or a factual challenge based on extrinsic evidence." *U.S. Airlines Pilots Ass'n ex rel. Cleary v. US Airways, Inc.*, 859 F. Supp. 2d 283, 296 (E.D.N.Y. 2012) (ARR) (quotation omitted); *see also Guerrero v. Ogawa USA Inc.*, No. 22-CV-2583 (LGS), 2023 WL 4187561, at *2 (S.D.N.Y. June 26, 2023) (citing *Harty v. W. Point Realty, Inc.*, 28 F.4th 435, 441 (2d Cir. 2022)) ("A Rule 12(b)(1) motion challenging subject matter jurisdiction may be based solely on the complaint or may rely on evidence beyond the pleadings."). Where, as here, a defendant's "jurisdictional challenge is fact-based, the defendant may proffer evidence beyond the pleading, and the plaintiff will need to come forward with evidence of their own to controvert that presented by the defendant if the affidavits submitted . . . reveal the existence of factual problems in the assertion of jurisdiction." *Davis*, 2023 WL 4364465, at *2 (quotation and alteration omitted) (quoting *Carter v. HealthPort Techs., LLC*, 822 F.3d 47, 57 (2d Cir. 2016)). "If the extrinsic evidence presented by the defendant is material and controverted, the district court will need to make findings of fact in aid of its decision as to standing." *Carter*, 822 F.3d at 57.

## DISCUSSION

Defendant argues that Plaintiff's Complaint must be dismissed for lack of subject matter jurisdiction because Plaintiff's claims are mooted now that Defendant has purportedly brought the website into compliance and that Plaintiff lacks standing for the same reason. Defendant also claims that the Court should decline to exercise supplemental jurisdiction over Plaintiff's claims under state and city law. The Court will address each argument in turn.

### I. Mootness

"Mootness is standing set in a time frame." *Melendez v. Complete Tile Collection, LLC*, No. 23-CV-8074 (SJB), 2024 WL 4295299, at *3 (E.D.N.Y. Sept. 25, 2024) (quotation marks omitted) (quoting *Stafford v. Int'l Bus. Machines Corp.*, 78 F.4th 62, 67 (2d Cir. 2023), *cert. denied*, 144 S. Ct. 1011 (2024)). "A case becomes moot — and therefore no longer a 'Case' or 'Controversy' for purposes of Article III — when the issues presented are no longer 'live' or the parties lack a legally cognizable interest in the outcome." *Id.* (quoting *Stafford*, 78 F.4th at 67). "The doctrine of standing generally assesses whether that interest exists at the outset, while the doctrine of mootness considers whether it exists throughout the proceedings." *Id.* (quoting *Uzuegbunam v. Preczewski*, 592 U.S. 279, 282 (2021)).

"To dismiss a Title III ADA claim as moot, a movant must demonstrate that (1) there is no reasonable expectation that the alleged violation will recur and (2) interim relief or events have completely and irrevocably eradicated the effects of the alleged violation." *Angeles v. Grace Products, Inc.*, No. 20-CV-10167 (AJN), 2021 WL 4340427, *3 (S.D.N.Y. Sept. 23, 2021) (quotation omitted). A plaintiff's request under the ADA for injunctive relief request "is moot if the defendant meets 'the formidable burden of showing that it is absolutely clear the allegedly wrongful behavior could not reasonably be expected to recur,' and that 'interim relief or events have completely and irrevocably eradicated the effects of the alleged violation.'" *Guerrero*, 2023 WL 4187561, at *2 (quoting *Klein ex rel. Qlik Techs., Inc. v. Qlik Techs., Inc.*, 906 F.3d 215, 224 (2d Cir. 2018)).

As a threshold matter, Defendant argues that the Court may not rely on the declarations submitted by Plaintiff's expert and Plaintiff himself. Def. Reply at 6–7.[5] However, Defendants made a fact-based Rule 12(b)(1) challenge in their motion to dismiss when they relied on extrinsic evidence — the affidavit from Defendant's CEO and an attached audit report. Thus, Plaintiff had to come forward with his own evidence, and "prov[e] by a preponderance of the evidence that subject matter jurisdiction exists." *Katz v. Donna Karan Co.*, 872 F.3d 114, 120 (2d Cir. 2017). Given this burden, the Second Circuit has "encouraged district courts to give the plaintiff ample opportunity to secure and present evidence relevant to the existence of jurisdiction where necessary." *Id.* at 121 (quoting *Amidax Trading Grp. v. S.W.I.F.T. SCRL*, 671 F.3d 140, 149 (2d Cir. 2011)). Accordingly, the Court will consider Plaintiff's submissions in determining whether subject matter jurisdiction exists. *See Quezada*, 2021 WL 5827437, at *3 (noting that courts have "allowed the filing of affidavits and similar documentation to show if a defendant has fixed accessibility issues on their website").

Here, Defendant has not met its "formidable burden" that its actions have completely and irrevocably eradicated the effects of the alleged violations. Although Defendant's CEO claims that he has reviewed the alleged deficiencies, he does not identify any of Plaintiff's issues with trying to buy a product from Defendant's

---

[5] In doing so, Defendant characterizes its original motion as a motion to dismiss under Rule 12(b)(6). Def. Reply at 6. However, its original motion was properly filed as under Rule 12(b)(1) for lack of subject matter jurisdiction and makes no mention nor does it present any arguments under Rule 12(b)(6) for failure to state a claim upon which relief can be granted. Def. Mem. at 8–9. *See generally* Fed. R. Civ. P. 12(b).

website.  Moreover, he relies on an audit report from accessiBe that is dated *before* Plaintiff filed the Complaint, and the report "does not identify the qualifications of the auditor, does not explain the methodology used, and does not explain the basis for its conclusion."  *Velazquez*, 2024 WL 4950065, at *5.  Plaintiff's expert and Plaintiff himself have demonstrated specific ways in which the website is still inaccessible to blind people. McCaffrey Aff. ¶¶ 7–8; Pl.'s Decl. ¶¶ 8–10.  In fact, Plaintiff still cannot purchase products from Defendant's website.  Pl.'s Decl. ¶ 8. Instead of responding to Plaintiff's examples of how the website is inaccessible to Plaintiff and others like him, Defendant argues that the Court should ignore Plaintiff's expert and Plaintiff's own declaration, and only rely on Franklin's affidavit. Def. Reply at 6–7.[6]

Given the dispute as to whether the identified barriers still exist and Defendant's failure in identifying which barriers it has allegedly fixed or the date that it fixed them, Defendant has not met its "formidable burden" of making it "absolutely clear" that the allegedly wrongful behavior has ceased.  *See Guerrero*, 2023 WL 4187561, at *4 (finding that defendant failed to establish mootness where plaintiff's expert asserted that barriers persisted on the website, despite defendant's CEO contending that the barriers to accessibility were remedied); *Angeles*, 2021 WL 4340427, at *3 (finding that defendant failed to establish mootness where plaintiff's expert asserted that barriers persisted on the website and Defendant relied on

---

[6] For example, Defendant does not respond to Plaintiff's argument that Franklin's affidavit incorrectly states that the audit happened in 2024 as opposed to 2023, the date written on the report.  Pl. Opp. at 11.

14

accessiBe to assert that barriers were remedied). This is especially so because it is not clear from Defendant's submissions whether Defendant made *any* changes to its website after Plaintiff filed the Complaint. Moreover, even if the Court were to credit that at some point Defendant fixed its website and remedied the barriers that Plaintiff and his expert have identified (and it does not, given the lack of specificity), "it is not clear that the wrongful behavior will not recur, or that the changes to the website have completely and irrevocably eradicated the accessibility issues." *Melendez*, 2024 WL 4295299, at *4 (quotation omitted).

Accordingly, Plaintiff's case is not moot.

## II. Standing

"In the ADA context, a plaintiff adequately alleges injury when "(1) the plaintiff alleged past injury under the ADA; (2) it was reasonable to infer that the discriminatory treatment would continue; and (3) it was reasonable to infer, plaintiff intended to return to the subject location.'" *Id.* at *2 (alteration omitted) (quoting *Lugo v. City of Troy*, 114 F.4th 80, 86 (2d Cir. 2024)).

The Court has already determined that Plaintiff has standing to bring this case based on the allegations in his complaint. *See* Order dated Sept. 3, 2023. Defendant repackages his mootness argument and argues that "there is no likelihood of any future injury where, as here, each of the purported accessibility issues identified in Plaintiff's Complaint, have been remediated pursuant to the WCAG 2.1." Def. Mot. at 11. However, Defendant's argument fails for the same reasons discussed above: Defendant has not identified which issues it has allegedly fixed and does not

15

acknowledge the barriers that Plaintiff himself identified in his Complaint. Since Defendant has not provided any evidence that contradicts the Complaint, the Court reaffirms its original decision finding that Plaintiff has standing based on the allegations in his Complaint.

### III. Plaintiff's State Law Claims

District courts have supplemental jurisdiction over state and local law claims "that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy." 28 U.S.C. § 1367(a). In addition, Plaintiff's claims under the NYSHRL, NYSCRL, and NYCHRL "are governed by the same standing requirements as the ADA." *Sookul v. Fresh Clean Threads, Inc.*, No. 23-CV-10164 (GHW), 2024 WL 4499206, at *5 (S.D.N.Y. Oct. 16, 2024) (quoting *Mendez v. Apple Inc.*, No. 18-CV-7550 (LAP), 2019 WL 2611168, at *4 (S.D.N.Y. Mar. 28, 2019) (collecting cases)). Because Plaintiff has standing under the ADA, and therefore has standing under the NYSHRL, NYSCRL, and NYCHRL, the Court may retain supplemental jurisdiction over those state and city law claims. *See Davis*, 2023 WL 4364465, at *7 ("Because Plaintiff's New York City claims are governed by the same standing requirements as the ADA, he also sufficiently alleges standing under the New York City Human Rights Law." (quotation and citation omitted)); *Angeles*, 2021 WL 4340427, at *1 n.1 ("Because the Court will not dismiss the ADA claim, it will continue to assert supplemental jurisdiction over Plaintiff's state law claim.")

Accordingly, because Plaintiff has standing to pursue his ADA claims and his case is not moot, the Court will retain supplemental jurisdiction over his claims under state and city law.

## CONCLUSION

For the foregoing reasons, Defendant's motion to dismiss is denied in its entirety.

SO ORDERED.

*/s/ Nina R. Morrison*
NINA R. MORRISON
United States District Judge

Dated: March 30, 2025
      Brooklyn, New York